TODD M. FRIEDMAN (SBN 216752)
tfriedman@toddflaw.com
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
23586 Calabasas Road, Suite 105
Calabasas, CA 91302
Telephone: (323) 306-4234

ILAN LAVIAN (SBN 354592)
ilan@lavianpc.com
LAVIAN, P.C.
10680 W. Pico Blvd., Suite 270
Los Angeles, CA 90064
Telephone: (213) 212-3036

Attorneys for Plaintiff Merri Bruce,
individually and on behalf of all others similarly situated

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

MERRI BRUCE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

IDEAL TAX GROUP INC., a California corporation, d/b/a IDEAL TAX; IDEALTAX, INC., a California corporation, formerly known as IDEAL TAX SOLUTION; and DOES 1 through 10, inclusive,

Defendants.

Case No. ____________

**CLASS ACTION COMPLAINT FOR:**

(1) THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.

(2) THE TEXAS BUSINESS & COMMERCE CODE §§ 302.101 AND 302.302

**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff Merri Bruce (“Plaintiff”), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Defendants Ideal Tax Group Inc. and IdealTax, Inc. (collectively,

"Ideal Tax" or "Defendant/s"), and Does 1 through 10, and alleges as follows upon personal knowledge as to her own acts and experiences, and upon information and belief, including investigation of counsel, as to all other matters.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), arising from Defendant's practice of bombarding consumers' cellular telephones with telemarketing text messages promoting its tax-relief services—and continuing to do so even after consumers expressly tell Defendant to stop.

2. Plaintiff never had any business relationship with Defendant and never consented to receive its text messages. After Defendant began texting her, Plaintiff replied "STOP." Defendant ignored her. Plaintiff then wrote "Please stop." Defendant ignored her again. All told, after Plaintiff's first express stop request, Defendant sent Plaintiff at least **100** additional telemarketing text messages—at least **87** of them after her second request.

3. The TCPA and its implementing regulations require any person or entity engaged in telemarketing to institute and honor internal do-not-call procedures, including recording and honoring a consumer's request not to receive further telemarketing communications. 47 C.F.R. § 64.1200(d). Defendant's conduct—sending at least 100 telemarketing messages after an unambiguous opt-out—demonstrates that Defendant either has no such procedures or systematically fails to honor them.

4. Plaintiff brings this action on behalf of herself and classes of similarly situated consumers to recover the statutory damages Congress provided, of up to $500 per violation, trebled up to $1,500 per violation for Defendant's knowing and willful misconduct, together with injunctive relief. 47 U.S.C. § 227(c)(5). On behalf of a subclass of Texas recipients, Plaintiff also seeks civil penalties of up to $5,000 per text

message under Tex. Bus. & Com. Code §§ 302.101 and 302.302, because, on information and belief, Defendant solicited Texas consumers by text without holding the telephone-solicitation registration certificate Texas law requires.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

6. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed class exceeds 100 members, at least one class member is a citizen of a state different from Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7. This Court has supplemental jurisdiction over the Texas state-law claim under 28 U.S.C. § 1367 because that claim arises from the same nucleus of operative fact—Defendant's unlawful telemarketing text-message campaign—as the federal claims.

8. This Court has general personal jurisdiction over each Defendant because each is incorporated under the laws of California and maintains its headquarters and principal place of business in this District, in Orange County, California—Ideal Tax Group Inc. in Irvine and IdealTax, Inc. in Santa Ana—where each is essentially at home.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including that, on information and belief, the telemarketing campaign at issue was conceived, directed, and transmitted from Defendants' Orange County offices.

## PARTIES

10. Plaintiff Merri Bruce is a natural person and a resident of Corpus Christi, Nueces County, Texas. At all relevant times, Plaintiff was the subscriber, owner, and sole customary user of the cellular telephone number ending in 1019 (the "1019 Number") and was financially responsible for that number.

11. Plaintiff uses the 1019 Number as a personal, residential telephone line. The 1019 Number is not associated with any business, is not held out to the public for business purposes, and is used by Plaintiff for personal, family, and household purposes, including in and around her home.

12. Defendant Ideal Tax Group Inc. is a California corporation (California Secretary of State entity no. 6027130, incorporated effective January 1, 2024), doing business as "Ideal Tax," with its principal place of business at 240 Progress, Suite 250, Irvine, California 92618, in Orange County. Faris Khatib is Ideal Tax Group Inc.'s Chief Executive Officer, Chief Financial Officer, Secretary, sole director, and agent for service of process.

13. Defendant IdealTax, Inc. is a California corporation (California Secretary of State entity no. 3919773), formerly known as Ideal Tax Solution, with its principal place of business at 2 MacArthur Place, Suite 300, Santa Ana, California 92707, in Orange County. Per its most recent Statement of Information, IdealTax, Inc.'s stated type of business is "Tax Resolution"; Faris Khatib is its Chief Executive Officer, sole director, and agent for service of process; and Nariman Khatib is its Secretary and Chief Financial Officer.

14. IdealTax, Inc. is the direct continuation of the "Ideal Tax" business founded in 2010: Ideal Tax Solution, LLC (California Secretary of State entity no. 201007810164), formed March 19, 2010, converted on June 28, 2016 into Ideal Tax Solution, a California stock corporation (entity no. 3919773), which changed its name to IdealTax, Inc. by Certificate of Amendment filed January 31, 2022, signed by Nariman Khatib as President and Faris Khatib as Secretary. Defendant Ideal Tax Group

Inc. was incorporated by Faris Khatib approximately two years later, effective January 1, 2024.

15. Defendants share common ownership, management, and control: Faris Khatib is the Chief Executive Officer and sole director of both corporate Defendants. On information and belief, Defendants jointly own and operate the “Ideal Tax” brand and tax-relief business, and each Defendant directed, controlled, participated in, authorized, and/or ratified the telemarketing text-message campaign alleged herein. Each Defendant is jointly and severally liable for the conduct alleged.

16. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named defendant—including any vendor, lead generator, or text-message platform that transmitted the messages at issue at Defendant’s direction or on its behalf—is responsible in some manner for the conduct alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

17. At all relevant times, each Defendant acted as the agent, servant, employee, or joint venturer of each other Defendant, acted within the course and scope of that relationship, and ratified the conduct of each other Defendant. Each Defendant is directly liable for text messages it physically transmitted and vicariously liable, under federal common-law agency principles, for messages transmitted on its behalf by third parties.

## THE TELEPHONE CONSUMER PROTECTION ACT

18. In 1991, Congress enacted the TCPA to protect consumers from the nuisance and privacy invasion caused by unwanted telemarketing. Congress found that “[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy” and that “[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.” Pub. L. No. 102-243, § 2(5)–(6) (1991).

19. Section 227(c) of the TCPA directed the Federal Communications Commission (the "FCC") to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

20. Among the regulations promulgated under Section 227(c) is 47 C.F.R. § 64.1200(d), which provides that "[n]o person or entity shall initiate any . . . call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity," and which prescribes minimum standards for those procedures.

21. The minimum standards prescribed by 47 C.F.R. § 64.1200(d) include, among others: (a) a written policy, available upon demand, for maintaining a do-not-call list, *id*. § 64.1200(d)(1); (b) training of personnel engaged in telemarketing in the existence and use of the do-not-call list, *id*. § 64.1200(d)(2); and (c) recording and honoring a consumer's do-not-call request within a reasonable time from the date the request is made, *id*. § 64.1200(d)(3).

22. Pursuant to the FCC's order *In re Strengthening the Ability of Consumers to Stop Robocalls*, CG Docket No. 02-278, FCC 24-24 (adopted Feb. 15, 2024), callers and texters must honor a consumer's revocation of consent or do-not-call request made by any reasonable means within a reasonable time not to exceed ten (10) business days of receipt. *See* 47 C.F.R. § 64.1200(a)(10), (d)(3). The FCC has specified that replying "stop" to a text message constitutes a per se reasonable means of revoking consent and requesting that messages cease. *Id.* at § 64.1200(a)(10).

23. The rules set forth in 47 C.F.R. § 64.1200(d) apply to text messages and to wireless telephone numbers. By rule, the do-not-call protections extend to "telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e); *see also In re Rules & Regulations Implementing the TCPA of*

*1991*, 18 FCC Rcd 14014, 14115 ¶ 165 (2003) (TCPA protections encompass text messaging).

24. Text messages are "calls" within the meaning of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951–54 (9th Cir. 2009).

25. Section 227(c)(5) creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection," and authorizes recovery of up to $500 in statutory damages for each violation, which may be trebled to up to $1,500 per violation where the defendant acted willfully or knowingly. 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

26. Defendant markets tax-relief and tax-resolution services to consumers throughout the United States. On information and belief, a core component of Defendant's marketing strategy is high-volume outbound text-message solicitation.

27. Defendant's telemarketing text messages identify the sender as "Ideal Tax," are signed with the persona "Michael," and direct recipients to call (714) 475-1709. Both the transmitting number, (949) 332-3778, and the callback number bear Orange County, California area codes. Each message also instructs the recipient: "Text STOP to end." Many of the messages sent to Plaintiff were verbatim duplicates of messages sent on other days, confirming that Defendant transmitted them en masse through an automated platform.

28. Plaintiff has never been a customer of Defendant, has never had any business relationship with Defendant, has never provided her telephone number to Defendant, and has never provided Defendant with prior express invitation or

permission—let alone prior express written consent—to send her telemarketing text messages.

29. Beginning on or about April 3, 2026, Defendant transmitted, or caused to be transmitted, telemarketing text messages to Plaintiff's 1019 Number advertising and promoting Defendant's tax-relief services. The messages were transmitted from telephone numbers including (949) 332-3778, a number bearing an Orange County, California area code. Between April 3, 2026, and April 23, 2026, Defendant sent Plaintiff at least twenty-nine (29) such messages.

30. The text messages were telephone solicitations and telemarketing: each encouraged Plaintiff to purchase Defendant's tax-relief services.

31. On or about April 23, 2026, Plaintiff replied "**STOP**" to Defendant's text messages—the precise opt-out keyword that Defendant's own messages instructed recipients to use ("Text STOP to end")—unambiguously communicating to Defendant her request that Defendant stop sending her telemarketing messages.

32. Plaintiff's "STOP" reply was a do-not-call request and a revocation of any purported consent, made by a per se reasonable means, that Defendant was required to record and honor within a reasonable time not to exceed ten business days. 47 C.F.R. §§ 64.1200(a)(10), 64.1200(d)(3).

33. Defendant did not stop. Between April 24, 2026, and May 1, 2026, Defendant transmitted, or caused to be transmitted, at least thirteen (13) additional telemarketing text messages to Plaintiff's 1019 Number.

34. On or about May 1, 2026, Plaintiff again wrote to Defendant: "**Please stop**." This was Plaintiff's second express do-not-call request.

35. Defendant still did not stop. After the "please stop" request of May 1 and until June 3, 2026, Defendant transmitted, or caused to be transmitted, at least eighty-seven (87) additional telemarketing text messages to Plaintiff's 1019 Number. In total, Defendant sent Plaintiff at least **100** telemarketing text messages after her April 23, 2026, stop request and at least **87** after her second stop request on May 1, 2026. All of

these messages were received by Plaintiff within a single 12-month period following her original do-not-call request.

36. Representative examples of Defendant's messages—each sent after both of Plaintiff's express stop requests, and each still instructing Plaintiff to "Text STOP to end"—include the following, true and correct copies of which are attached hereto as Exhibit A:

> **May 28, 2026, 1:54 p.m.**: "Ideal Tax: A tax liability with the IRS can possibly be negotiated down by up to 90%. No need to worry anymore. (714) 475-1709 - Michael Text STOP to end"
>
> **May 29, 2026, 9:54 a.m.**: "Ideal Tax: You may be eligible for IRS Hardship Status-no payments, no levies. Let's review your case today. Call me (714) 475-1709 - Michael Text STOP to end"
>
> **May 29, 2026, 1:54 p.m.**: "Ideal Tax: You may not have to pay the IRS back! Ask me how CNC status can wipe out your liability-call me today. (714) 475-1709 - Michael Text STOP to end"
>
> **June 1, 2026, 9:54 a.m.**: "Ideal Tax: Good news i can't wait to qualify you for one of the IRS generous tax relief programs. Call me today! (714) 475-1709 - Michael Text STOP to end"

37. Far more than ten business days elapsed between Plaintiff's first stop request and the vast majority of Defendant's subsequent messages. No conceivable grace period excuses Defendant's conduct.

38. On information and belief, Defendant either (a) has not instituted the written do-not-call policies and procedures required by 47 C.F.R. § 64.1200(d)(1); (b) has failed to train its personnel and its agents' personnel in the existence and use of an internal do-not-call list as required by 47 C.F.R. § 64.1200(d)(2); and/or (c) has failed to record and honor do-not-call requests as required by 47 C.F.R. § 64.1200(d)(3) and

(d)(6). Defendant's transmission of at least 100 telemarketing messages to Plaintiff after an unambiguous stop request is itself powerful evidence of each of these failures.

39. Because Defendant had not instituted the procedures that 47 C.F.R. § 64.1200(d) makes a precondition to initiating any call for telemarketing purposes, each of the at least 129 telemarketing text messages Defendant sent to Plaintiff was initiated in violation of the regulation—and, at an absolute minimum, each of the at least 100 messages sent after Plaintiff's express do-not-call requests violated the regulation.

40. On or about June 12, 2026, Plaintiff registered the 1019 Number on the National Do Not Call Registry in a further effort to stop Defendant's messages. Absent injunctive relief, Plaintiff reasonably fears that Defendant's unlawful messages will continue.

41. Plaintiff was harmed by Defendant's messages. The messages invaded her privacy, intruded upon her seclusion, annoyed and harassed her, occupied her telephone's storage and capacity, depleted her telephone's battery, and wasted her time, including the time spent reviewing the messages and attempting to make them stop.

42. Plaintiff's experience is not unique. On information and belief, Defendant's failure to maintain and honor internal do-not-call procedures is systematic, and Defendant has sent telemarketing text messages to hundreds or thousands of consumers after those consumers asked Defendant to stop.

43. Defendants have long been on notice that their telemarketing practices violate the law. In *Morton v. Ideal Tax Solution, LLC*, No. 8:24-cv-01103 (C.D. Cal., filed May 22, 2024), a consumer sued the Ideal Tax business—naming it under its former "Ideal Tax Solution, LLC" name and directing service at 2 MacArthur Place, Suite 300, Santa Ana, California, which is Defendant IdealTax, Inc.'s principal office—alleging that it sent her telemarketing text messages and prerecorded voice calls; that she replied "stop" and received an automated confirmation that further texts would be blocked; and that it nevertheless continued to text and call her. The Ideal Tax

business was also sued for TCPA violations in *Calbo v. Ideal Tax Solution, LLC*, No. 5:23-cv-00368 (M.D. Fla. filed June 14, 2023). Despite this notice, Defendants' unlawful conduct—including the failure to honor express stop requests—has continued, as Plaintiff's experience demonstrates.

44. On information and belief, Defendant maintains, or has access to, transmission records and dialing-platform logs reflecting the date, time, content, target number, and disposition of each outbound text message, as well as inbound "STOP" and other opt-out replies, such that class members are readily identifiable from Defendant's own records.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as a member and representative of the following class and subclass (the "Class" and the "Texas Registration Subclass," and together, the "Classes"):

> **Class**: All persons in the United States who, within four years prior to the filing of this action through the date of class certification, (1) received more than one telemarketing text message within any 12-month period, sent by or on behalf of Defendant, (2) after the person had communicated to Defendant, or to anyone texting on Defendant's behalf, a request that the messages stop, including by replying "STOP" or any substantially similar opt-out message.

> **Texas Registration Subclass**: All persons located in Texas, or whose telephone numbers bear Texas area codes, who, from September 1, 2025 through the date of class certification, received one or more telemarketing text messages sent by or on behalf of Defendant, at a time when Defendant did not hold a registration certificate issued by the Texas Secretary of State pursuant to Tex. Bus. & Com. Code § 302.101.

46. Excluded from the Classes are Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, legal representatives, successors, and assigns; any judge assigned to this case and members of the judge's immediate family and staff; and Plaintiff's counsel.

47. **Numerosity**. The members of the Classes are so numerous that joinder of all members is impracticable. On information and belief, Defendant transmitted telemarketing text messages en masse to thousands of consumers, including hundreds or thousands who had submitted stop requests and hundreds or thousands of recipients located in Texas. The precise number of members of each of the Classes is ascertainable from Defendant's and its vendors' records.

48. **Commonality and Predominance**. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members, including: (a) whether the text messages were telephone solicitations and/or telemarketing; (b) whether Defendant instituted the procedures required by 47 C.F.R. § 64.1200(d), including a written policy, personnel training, and recording of do-not-call requests; (c) whether Defendant honored do-not-call requests within the time required by law; (d) whether Defendant is directly or vicariously liable for the messages; (e) whether Defendant's violations were willful or knowing; (f) whether Defendant made telephone solicitations to persons located in Texas without holding the registration certificate required by Tex. Bus. & Com. Code § 302.101; and (g) the appropriate measure of statutory damages and civil penalties and the scope of injunctive relief.

49. **Typicality**. Plaintiff's claims are typical of the claims of the Classes. Plaintiff and all Class members received telemarketing text messages sent by or on behalf of Defendant after asking Defendant to stop; Plaintiff, a Texas resident with a Texas telephone number, and all Texas Registration Subclass members received Defendant's telemarketing text messages in Texas while, on information and belief,

Defendant held no Texas registration certificate. All assert the same claims under the same statutes and regulations arising from the same course of conduct.

50. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are aligned with, and not antagonistic to, those of the Classes, and Plaintiff has retained counsel experienced in consumer class actions and TCPA litigation.

51. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages and civil penalties available to each member of the Classes are modest relative to the burden and expense of individual litigation, class-wide issues can be resolved through common proof drawn from Defendant's own records, and class treatment will conserve judicial resources and avoid inconsistent adjudications. No unusual manageability difficulties are presented.

52. Defendant has acted or refused to act on grounds generally applicable to the Classes, making final injunctive relief appropriate respecting the Classes as a whole under Rule 23(b)(2).

**FIRST CAUSE OF ACTION**

**Negligent Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Class)**

53. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

54. Defendant initiated, or caused to be initiated on its behalf, more than one telemarketing text message within a 12-month period to Plaintiff and to each Class member after Plaintiff and each Class member had requested that the messages stop.

55. In so doing, Defendant violated the regulations prescribed under 47 U.S.C. § 227(c), including 47 C.F.R. § 64.1200(d), by initiating telemarketing communications to residential telephone subscribers, including wireless subscribers

per 47 C.F.R. § 64.1200(e), without having instituted the required minimum procedures, including a written do-not-call policy, personnel training, and the recording and timely honoring of do-not-call requests. 47 C.F.R. § 64.1200(d)(1)–(3), (6).

56. The foregoing violations were, at minimum, negligent.

57. As a result of Defendant's violations, Plaintiff and each Class member are entitled to an award of up to $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

58. Plaintiff and the Class are also entitled to, and seek, injunctive relief prohibiting Defendant's continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

**SECOND CAUSE OF ACTION**

**Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Class)**

59. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

60. Defendant's violations were knowing and/or willful. Defendant received Plaintiff's and Class members' express stop requests—transmitted to the very numbers and platforms from which Defendant sent its solicitations, and using the very "STOP" keyword Defendant's own messages prescribe—and nevertheless continued to send telemarketing messages. In Plaintiff's case, Defendant sent at least 100 messages after her first express request and, after she asked a second time—"Please stop"—sent at least 87 more, each continuing to instruct her to "Text STOP to end." Defendant knew, or recklessly disregarded, that the recipients had asked it to stop.

61. As a result of Defendant's knowing and/or willful violations, Plaintiff and each Class member are entitled to treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

62. Plaintiff and the Class are also entitled to, and seek, injunctive relief prohibiting Defendant's continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

## THIRD CAUSE OF ACTION

### Violations of Tex. Bus. & Com. Code §§ 302.101 and 302.302

### (On Behalf of Plaintiff and the Texas Registration Subclass)

63. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

64. Plaintiff received Defendant's telemarketing text messages in Texas, on a telephone number bearing a Texas area code.

65. Section 302.101 of the Texas Business and Commerce Code prohibits a seller from making a telephone solicitation from a location in Texas, or to a purchaser located in Texas, unless the seller holds a registration certificate issued by the Texas Secretary of State for the business location from which the solicitation is made.

66. Effective September 1, 2025, the Texas Legislature amended Chapter 302 to make explicit that a "telephone solicitation" includes the transmission of a text or graphic message or of an image. See Tex. S.B. 140, 89th Leg., R.S. (2025); Tex. Bus. & Com. Code § 302.001(7).

67. No exemption from Chapter 302's registration requirement applies to the conduct at issue. The messages Defendant sent to Plaintiff and the Texas Registration Subclass members were not consent-based: each recipient had expressly told Defendant to stop—revoking any conceivable consent—before receiving the messages at issue.

68. At all times that Defendant transmitted, or caused to be transmitted, telemarketing text messages to Plaintiff and the Texas Registration Subclass members, Defendant did not hold a registration certificate issued by the Texas Secretary of State. On June 12, 2026, in response to an inquiry from Plaintiff's counsel, the Office of the Texas Secretary of State confirmed that no telephone solicitation registration statement

or registration certificate is on file for Ideal Tax Group Inc., IdealTax, Inc., or Ideal Tax Solution, or under the names of Defendants' principals.

69. Defendant violated Tex. Bus. & Com. Code § 302.101 each time it made, or caused to be made, a telephone solicitation by text message to Plaintiff and each Texas Registration Subclass member while holding no registration certificate.

70. Section 302.302(a) of the Texas Business and Commerce Code subjects a person who violates Chapter 302 to a civil penalty of not more than $5,000 for each violation. Section 302.302(d) further entitles the party bringing the action to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees.

71. Plaintiff and the Texas Registration Subclass members are entitled to civil penalties of up to $5,000 for each telemarketing text message Defendant sent in violation of Chapter 302, together with all reasonable costs of prosecuting this action, including attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

a. An order certifying the Class and the Texas Registration Subclass as defined above, appointing Plaintiff as representative of the Classes, and appointing the undersigned as Class Counsel;

b. A declaration that Defendant's conduct violated 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(d), and Tex. Bus. & Com. Code § 302.101;

c. An award to Plaintiff and each Class member of statutory damages of up to $500 for each negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B);

d. An award to Plaintiff and each Class member of treble statutory damages of up to $1,500 for each knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5);

e. An award to Plaintiff and each Texas Registration Subclass member of civil penalties of up to $5,000 for each violation of Tex. Bus. & Com. Code § 302.101, together with all reasonable costs of prosecuting this action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees, pursuant to Tex. Bus. & Com. Code § 302.302(a) and (d);

f. An injunction requiring Defendant to cease all telemarketing communications made in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d), and to institute the policies, training, and recordkeeping required by law, pursuant to 47 U.S.C. § 227(c)(5)(A);

g. An award of reasonable attorneys' fees and costs to the extent permitted by law;

h. Pre-judgment and post-judgment interest to the extent permitted by law; and

i. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

72. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims and issues so triable.

Dated: June 30, 2026

Respectfully submitted,

**LAVIAN, P.C.**

By: /s/ Ilan Lavian
Ilan Lavian

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By: /s/ Todd Friedman
Todd M. Friedman

Attorneys for Plaintiff and the Proposed Class

# EXHIBIT A

*Representative Text Messages*

**Message 1 — May 28, 2026, 1:54 p.m.**



**Message 2 — May 29, 2026, 9:54 a.m.**



**Message 3 — May 29, 2026, 1:54 p.m.**



**Message 4 — June 1, 2026, 9:54 a.m.**

